**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRAVIS L. COOK, SR.,**

                        **Plaintiff,**

              v.                                        **1:16-CV-752**
                                                                  **(FJS/DJS)**

**JOHN DWYER, City of Albany Police Officer,**
**both individually and/or as an agent, servant, and/or**
**employee of the City of Albany; GREGORY**
**MULLIGAN, City of Albany Police Officer,**
**both individually and/or as an agent, servant, and/or**
**employee of the City of Albany**; **JOHN REGAN,**
**City of Albany Police Officer, both individually and/or**
**as an agent, servant, and/or employee of the City**
**of Albany**; **and TYSON RUECKER, City of Albany**
**Police Officer, both individually and/or as an agent,**
**servant, and/or employee of the City of Albany**,

                        **Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **THE KINDLON LAW FIRM, PLLC** | **LEE CAREY KINDLON, ESQ.** |
| 52 James Street, 5th Floor | **GENNARO D. CALABRESE, ESQ.** |
| Albany, New York 12207 | |
| Attorneys for Plaintiff | |
| | |
| **THE REHFUSS LAW FIRM P.C.** | **ABIGAIL W. REHFUSS, ESQ.** |
| 40 British American Boulevard | **STEPHEN J. REHFUSS, ESQ.** |
| Latham, New York 12110 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On June 24, 2016, Plaintiff commenced this action under 42 U.S.C. § 1983 against

Defendants, all of whom are City of Albany Police Officers. *See* Dkt. No. 1 ("Complaint"). In his

complaint, Plaintiff asserted three causes of action: (1) false arrest, (2) false imprisonment, and (3)malicious prosecution, all of which arose from events that occurred in 2014.  *See id.*

Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 36.

## II. BACKGROUND

On August 1, 2014, Defendants, members of the City of Albany Police Department's Community Response Unit ("CRU"), arrested an individual ("CS"), who told the arresting officers that "he wanted to help himself out by offering up information on his heroin dealer, the Plaintiff, by setting up a buy."  *See* Dkt. No. 36-1 ("Defendants' Statement of Facts") at ¶¶ 1-4 (citing [Dkt. No. 36-5 ("Grand Jury Tr. A")[1] at] 8:11-25, 9:1-8).[2]

In the presence of Defendants Mulligan and Dwyer, the CS "placed a recorded phone call and exchanged several text messages with phone number 518-650-4080 setting up a buy for 50 grams of heroin for $3,500" at a specified time and location.  *See* Defendants' Statement of Facts at ¶¶ 5, 7 (citing [Grand Jury Tr. A at] 9:1-8, 9:12-14, 9:17-20, 9:21-10:6).  Defendants Mulligan and Dwyer listened to the phone call and read the text message exchange.  *See id.* at ¶ 6 (citing [Dkt. No. 36-6 ("Suppression Hearing Tr.") at] 6:4-7:2).

---

[1] Both Plaintiff and Defendants filed certain pages of the Grand Jury Transcript.  References to "Grand Jury Tr. A" are to the pages that Defendants filed.  References to "Grand Jury Tr. B" are to the pages that Plaintiff filed.

[2] Generally, the Court's references to page numbers are to those page numbers that the Court's electronic filing system ("CM/ECF") generates.  However, citations to transcripts of any kind are to the actual page numbers of those transcripts designated in the following manner: [page number]:[line numbers].

After the CS finished setting up the buy, Defendants Mulligan and Dwyer drove him to the specified location, an apartment building, to commence surveillance from an unmarked vehicle. *See id.* at ¶ 8 (citing [Grand Jury Tr. A at] 10:6-15).  Defendants planned "to perform a RIP operation," in which "officers intercept the drug dealer before he has any contact with the [CS]." *See id.* at ¶ 9 (citing [Grand Jury Tr. A at] 17:10-13, 34:8-11; [Suppression Hearing Tr. at] 5:13-17).

Just before arriving at the apartment building, a caller at the aforementioned number telephoned the CS and "told him that he was arriving and that he was going to send his white girl up to the residence with the drugs." *See id.* at ¶ 11 (citing [Grand Jury Tr. A at] 10:16-23). The CS placed the call on speakerphone so that Defendants Mulligan and Dwyer could also listen to the conversation and confirm that the caller was a male. *See id.* at ¶¶ 12-13 (citing [Grand Jury Tr. A at] 10:16-11:7; [Suppression Hearing Tr. at] 8:7-19). They also visually confirmed that the call came from the same number that the CS had contacted while at the police station, 518-650-4080. *See id.* at ¶ 13 (citing [Suppression Hearing Tr. at] 8:7-19).

Shortly after the telephone call, Defendants observed a vehicle arrive outside the apartment building. *See id.* at ¶ 14 (citing [Grand Jury Tr. A at] 10:1-19; 34:23-35:4). The CS confirmed to Defendant, "'that's the car.'" *See id.* at ¶ 15 (quoting [Suppression Hearing Tr. at] 9:1-9). Inside the vehicle was a white female, two adult males, one of whom was Plaintiff, and a small child. *See id.* at ¶ 14 (citation omitted); Dkt. No. 38-2 ("Plaintiff's Memorandum") at 4 (citing [Dkt. No. 38-3 ("Grand Jury Tr. B")] at 25[:13-18]; [Dkt. No. 38-5 ("Plaintiff's Deposition Tr.")] at 18[:13-16]). Ms. Holland McKay, "the white female" was driving the car, Mr. Artce Kennedy was sitting in the front passenger seat, and Plaintiff and his young son were sitting in the back seat. *See* Defendants' Statement of Facts at ¶¶ 18-19 (citing [Grand Jury Tr. A at] 12:5-11, 12:22-25; [Dkt. No. 36-7

("Brucato Deposition Tr.")] at 18:20-24]).  Plaintiff claims that, earlier in the evening, Ms. McKay and Mr. Kennedy had agreed to drive him and his son home but had informed him that "they had to make a stop on the way."  *See* Plaintiff's Memorandum at 4 (citing [Grand Jury Tr. B] at 25[:10-13]; [Plaintiff's Deposition Tr.] at 15[:15]-16[:3]).

After arriving at the location, Ms. McKay exited the vehicle and began to enter the apartment building where the CS had arranged to purchase the drugs.  *See* Defendants' Statement of Facts at ¶ 16 (citing [Grand Jury Tr. A at] 11:11-13, 11:20-22]).  Plaintiff claims that, while Ms. McKay was entering the building, Mr. Kennedy was speaking to someone on his cell phone.  *See* Plaintiff's Memorandum at 4 (citing [Grand Jury Tr. B] at 25[:20-21]).  As Defendant Mulligan observed Ms. McKay about to enter the apartment building, he relayed the information to "take down units" in the area, who subsequently followed her into the building.  *See* Defendants' Statement of Facts at ¶ 17 (citing [Grand Jury Tr. A at] 11:23-12:4).  Officers subsequently arrested Ms. McKay after searching her and finding 62 grams of heroin and approximately 5 grams of cocaine on her person.  *See id.* at ¶ 18 (citing [Suppression Hearing Tr. at] 9:13-23; [Grand Jury Tr. A at] 12:22-13:17; [Dkt. No. 36-8 ("Defendants' Ex. F: McKay Police Report") at 3-4]).

At the same time that the take down units were approaching Ms. McKay, additional officers approached Plaintiff and Mr. Kennedy, who were still sitting in the vehicle.  *See id.* at ¶ 17 (citing [Grand Jury Tr. A at] 11:23-12:4).  Officers then searched and arrested both Plaintiff and Mr. Kennedy.  *See id.* at ¶¶ 17, 19-20 (citing [Grand Jury Tr. A at] 11:23-12:4, 12:5-11, 12:9-15, 35:5-7; [Brucato Deposition Tr. at] 13:7-12, 18:20-24).  During the arrest and subsequent search, officers confiscated a "wallet, identification, money, and a cell phone" from Mr. Kennedy.  *See* Defendants' Statement of Facts at ¶ 21 (citing [Grand Jury Tr. A at] 35:5-11).  Officers also retrieved a cell

phone from Plaintiff. *See id.* (citing [Grand Jury Tr. A at] 12:9-15). Plaintiff admits that, after the officers took him to the police station, Defendant Ruecker made sure that both seized cell phones were on and operating properly. *See id.* at ¶ 22 (citing [Grand Jury Tr. A at] 36:18-24, 38:18-39:7); Plaintiff's Statement of Facts at ¶ 22 (citing [Grand Jury Tr. B] at 28[:21]-29[:13]; [Plaintiff's Deposition Tr.] at [33:20-22,] 24[:17-22]). Plaintiff also acknowledges that Defendant Ruecker called the previously-mentioned number associated with the drug buy, 518-650-4080, from his office phone. *See* Plaintiff's Statement of Facts at ¶ 22 (citations omitted). However, the parties disagree about whether the phone that rang when Defendant Ruecker called that number was the phone that the officers had seized from Plaintiff. *See* Defendants' Statement of Facts at ¶ 22 (citations omitted); Plaintiff's Statement of Facts at ¶ 22 (citations omitted). Plaintiff claims that his cell phone had a number that began with a "434" area code, not a "518" area code; and, therefore, his phone was not the phone that rang when Defendant Ruecker placed a call to the number associated with the drug buy. *See* Plaintiff's Statement of Facts at ¶ 33 (citing [Grand Jury Tr. B] at 29[:1-13], 32[:5-12]). Nevertheless, Defendants charged Plaintiff with "Criminal Sale of a Narcotic Drug." *See* Defendants' Statement of Facts at ¶ 23 (citing [Defendants' Ex. E: Cook Police Report at 1]). After Defendants generated "pedigree information and a field contact card for" Mr. Kennedy, they released him. *See* Defendants' Statement of Facts at ¶ 24 (citing [Grand Jury Tr. A at] 35:17-21; [Dkt. No. 36-8 ("Defendants' Ex. G: Kennedy Pedigree Information") at 5-6]).

Albany County Assistant District Attorney ("ADA") Joseph Brucato prosecuted Plaintiff's criminal case. *See* Defendants' Statement of Facts at ¶ 25 (citing [Brucato Deposition Tr. at] 5:7-6:8). A grand jury indicted Plaintiff, and the presiding judge at Plaintiff's probable cause hearing found that there was probable cause for the charge against Plaintiff. *See id.* at ¶¶ 26-27 (citing

[Brucato Deposition Tr. at] 6:18-20, 25:2-12). ADA Brucato ultimately sought dismissal of the charges "against Plaintiff in the interest of justice" because he believed he did not have "enough evidence to prove the case beyond a reasonable doubt." *See* Defendants' Statement of Facts at ¶ 28 (citing [Brucato Deposition Tr. at] 11:10-12).[3]

ADA Brucato based his decision to seek dismissal of the charge against Plaintiff on information he had received prior to trial. First, Plaintiff's counsel informed ADA Brucato that Plaintiff protested his innocence and "was willing to have the phone dumped, meaning release all the information to it." *See* Brucato Deposition Tr. at 10:15-19. Plaintiff's counsel also told ADA Brucato that he had "brought in a private DNA lab to have the phone swabbed," which ADA Brucato found to be "highly irregular." *See id.* at 10:20-22. Finally, after talking to Plaintiff's counsel, ADA Brucato located Mr. Kennedy, who at that time was in the Albany County jail for another drug charge. *See id.* at 10:22-11:1. Mr. Kennedy told ADA Brucato that "he was the one [who] committed the crime." *See id.* at 11:3-4.

### III. DISCUSSION

**A.    Standard of review**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

---

[3] ADA Brucato also testified, however, that he believed that Defendants "'absolutely had probable cause to arrest Plaintiff '[b]ecause he had the buy phone on him and he showed up in a car when there was a call made for drugs.'" *See* Defendants' Statement of Facts at ¶ 25 (quoting [Brucato Deposition Tr. at] 25:16-24).

the burden of demonstrating "that no genuine issue of material fact exists." *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)).

To survive a motion for summary judgment, the non-movant "'must "do more than simply show that there is some metaphysical doubt as to the material facts." . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor.'" *Cuffee v. City of New York*, No. 15 Civ. 8916, 2018 WL 1136923, *4 (S.D.N.Y. Mar. 1, 2018) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). Therefore, "'[m]ere conclusory statements, conjecture or speculation' by the [non-movant] will not defeat a summary judgment motion." *Id.* (quoting *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002)).

**B.     Plaintiff's false arrest/false imprisonment claims**

Under § 1983, claims of false arrest and false imprisonment share the same elements. *See Saldana v. Vill. of Port Chester*, No. 09 Civ. 6268, 2010 WL 6117083, *2 (S.D.N.Y. July 21, 2010) (citations omitted). To maintain either of these claims, in addition to showing that the defendant acted under color of state law, a plaintiff must establish "(1) that the defendant[s] intended to confine him, (2) [he] was conscious of the confinement, (3) [he] did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 144 (N.D.N.Y. 1998) (citation omitted). "An arrest may be 'privileged' if it was 'based on probable cause.'" *Folk v. City of New York*, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). Consequently, a defendant may defeat

such a claim if "he had probable cause for the arrest[.]"  *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (quotation omitted).

There is no dispute that Plaintiff has satisfied the first three elements of his false arrest/false imprisonment claims.  Thus, the Court need only address whether Plaintiff has satisfied the fourth element of his claims, *i.e.*, whether the arrest/imprisonment was otherwise privileged.

"[P]robable cause to arrest exists where the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  "The probable cause inquiry is objective, rather than subjective, and should consider only the facts known to the arresting officer at the time of the arrest."  *Dawkins v. Williams*, 511 F. Supp. 2d 248, 251 (2d Cir. 2007) (citing *Jaegly v. Couch*, 439 F.3d 149, 154-55 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152-53, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004))); *see also Haussman v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (stating that "the validity of an arrest does not depend on an ultimate finding of guilt or innocence. . . . Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967))).  Moreover, "[p]robable cause is not dependent on the ultimate accurateness and truthfulness" of the knowledge officers possessed at the time of the arrest.  *Universal Calvary Church v. City of New York*, No. 96CIV.4606(RPP), 2000 WL 1538019, *5 (S.D.N.Y. Oct. 17, 2000).  Rather, the probable cause inquiry turns on whether officers "acted reasonably and in good faith" when they relied on inaccurate or mistaken information.  *Bernard v. United States*, 25 F.3d 98, 102-03 (2d Cir. 1994) (holding that the district court had correctly found

that police officers had probable cause to arrest the plaintiff despite later discovering that their CS had misidentified the plaintiff as being his seller of crack cocaine). Finally, "[c]ourts should look to the 'totality of the circumstances'" when determining whether there is probable cause to arrest an individual. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quotation omitted).

In the present case, the "totality of the circumstances" surrounding Plaintiff's arrest leads to the inescapable conclusion that Defendants had probable cause to arrest and imprison him. As outlined above, Defendants personally observed every moment leading up to and culminating in Plaintiff's arrest. Additionally, prior to Defendants' execution of the "RIP operation," the CS had identified Plaintiff as his drug dealer and, in the presence of Defendants Mulligan and Dwyer, set up a drug buy at a specified time and location with an individual with a cell phone number beginning with area code "518." Furthermore, both officers listened to the phone call and read the text message exchange and confirmed that the individual associated with the "518" number agreed to sell the CS more than $3,000 worth of heroin and cocaine at the apartment building where Defendants subsequently arrested Plaintiff.

Moreover, upon arriving at the apartment building, the CS identified the car in which Plaintiff was a passenger as the car associated with the drug buy. In addition, a "white female" exited that car and began to walk towards the apartment building, thereby confirming for Defendants that the vehicle the CS had identified was likely the car associated with the drug buy, as Defendants had overheard the "518" caller indicate that he would be sending the drugs into the apartment building with his "white girl." In addition, take down units subsequently confirmed that the "white girl," Ms. McKay, was carrying the agreed upon quantity of drugs on her person at the time they arrested her in the building. Based on all this information, the Court finds that any

reasonable officer, knowing what Defendants knew at the time, would have reasonably concluded that one or both of the male individuals in the car had arranged the drug deal; and, therefore, the Court concludes that Defendants had probable cause to arrest Plaintiff.

Furthermore, Plaintiff's assertion that his phone had a "434" area code,[4] not a "518" area code, and, therefore, that his phone was not the one that rang when Defendants called the number associated with the drug deal, *see* Plaintiff's Statement of Facts at ¶¶ 22, 33 (citations omitted), when viewed in light of the totality of the circumstances, is insufficient to create an issue of fact as to whether Defendants had probable cause to arrest Plaintiff.

Finally, even assuming that Defendants were mistaken about which of the two phones they took from Plaintiff's person, Plaintiff has not come forward with any evidence to suggest that Defendants acted unreasonably or did not act in good faith. *See Universal Calvary Church*, 2000 WL 1538019, at *5 (discussing a series of cases in which the courts concluded that probable cause could exist even when the officers had relied on mistaken information so long as they acted in good faith in relying on that information).

Accordingly, after reviewing the entire record and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has not come forward with sufficient evidence to

---

[4] Other than Plaintiff's statement that the phone that Defendants removed from his person had a "434" area code, there is nothing in the record to support this claim. To support their contention that both of the phones they confiscated when they arrested Mr. Kennedy and Plaintiff had "518" area codes, Defendants submitted a photograph of the evidence bags containing the two cell phones that they confiscated from Mr. Kennedy and Plaintiff. *See* Dkt. No. 39 ("Defendants' Reply Memorandum") at 5-6 (citing [Defendants' Ex. 1: Photographs of Evidence Bags with Cell Phones]). The label on one of the evidence bags indicates that it contains a cell phone with the number 518-375-9409; the label on the other evidence bag indicates that it contains a cell phone with the number 518-650-4080. *See* Dkt. No. 39-1 ("Defendants' Ex. 1: Photographs of Evidence Bags with Cell Phones") at 2-3.

allow a reasonable jury to find in his favor. Rather, the totality of the circumstances clearly demonstrates that Defendants had probable cause to arrest him. Accordingly, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's false arrest and false imprisonment claims.

### C.  Plaintiff's malicious prosecution claim

To state a claim for malicious prosecution under § 1983, a plaintiff must establish that "'(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice.'" *Dawkins*, 511 F. Supp. 2d at 251 (quoting *Russo v. N.Y.*, 672 F.2d 1014, 1018 (2d Cir. 1982) (quoting *Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977))).

In this case, there is no dispute that Plaintiff has satisfied the first element of his claim, therefore the Court need only address the other three elements.

A plaintiff cannot successfully maintain a claim for malicious prosecution if the criminal proceeding against him did not terminate in his favor. *See Amex Dev., LLC v. Aljohn Grp., Inc.*, 134 A.D.3d 865, 867 (2d Dep't 2015) (citations omitted). In *Cantalino v. Danner*, 96 N.Y.2d 391 (2001), the New York Court of Appeals held that "[t]here is no per se rule that a dismissal in the interest of justice can never constitute a favorable termination." *Id.* at 396. Rather, the court explained that "the question is whether under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Id.* In *Catalino*, the Court of Appeals concluded that the dismissal in the interest of justice in that case constituted a favorable termination because

"the Criminal Court [had] stated in no uncertain terms that it was dismissing the case because the criminal charges against [the] plaintiff were unfounded." *Id.*; *see also Bellissimo v. Mitchell*, 122 A.D.3d 560, 562 (2d Dep't 2014) (concluding that the trial court erred in dismissing the plaintiff's malicious prosecution claim for failure to allege a favorable termination in the underlying criminal proceeding when the criminal charges against the plaintiff were dismissed in the interest of justice "based upon 'the weakness of the proof of guilt' . . . a conclusion which [wa]s not inconsistent with the plaintiff's innocence. . . ." (internal quotation and citation)).

In this case, the state trial court dismissed Plaintiff's case in the interests of justice. *See* Defendants' Statement of Facts at ¶ 28 (citing Brucato Deposition Tr. at 11:10-12). Although in many cases a dismissal in the interest of justice would not satisfy the second element of a plaintiff's malicious prosecution claim, in this case, the parties have raised factual issues regarding the nature of the dismissal that preclude the Court from finding, as a matter of law, that the dismissal did not constitute a "favorable termination." ADA Brucato indicated that he sought dismissal of Plaintiff's case, at least in part, based on information that he had received before Plaintiff's trial commenced that tended to support Plaintiff's claim of innocence. *See* Brucato Deposition Tr. at 10:11-11:16. As noted, Plaintiff's counsel told ADA Brucato that he had hired a private DNA laboratory to swab the cell phone associated with the drug buy, behavior that ADA Brucato found strange if Plaintiff truly was guilty. *See id.* at 10:14-22. Additionally, Mr. Kennedy told ADA Brucato that, although he and Plaintiff "both used this girl to transport drugs, . . . on that occasion . . . he was the one who [committed the crime], not Plaintiff." *See id.* at 11:5-9. Thus, unlike dismissals in the interest of justice based on "mercy and compassion," in this case. Plaintiff has come forward with sufficient evidence from which a jury could find that the dismissal of his case was not inconsistent with his

innocence and, therefore, constituted a favorable termination for purposes of his malicious prosecution claim.

However, even if the Court assumes for the sake of argument, that Plaintiff could establish that his criminal case terminated in his favor, he must still prove that there was no probable cause for the commencement and/or continuation of the criminal proceedings against him. *See Savino*, 331 F.3d at 75. "[E]vidence of a subsequent arraignment or indictment is admissible as some proof of the presence of probable cause," *Broughton v. New York*, 37 N.Y.2d 451, 458 (1975), as "the law holds that [a] Grand Jury [indictment] creates a presumption of probable cause," *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (citations omitted). Under New York law, the plaintiff bears the burden of refuting that presumption, which "may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon*, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456). Thus, in order to survive a motion for summary judgment on his malicious prosecution claim, a plaintiff "must have submitted evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad fath." *Id.* at 73. Mere conjecture or surmise and allegations that officers procured an indictment in bad faith are not enough. *Id.* (citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).

Furthermore, a court cannot simply rely on a plaintiff's version of the events and a favorable disposition to conclude that officers procured the indictment in bad faith. *See Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order) (stating that "[t]he various iterations of [the plaintiff's] complaint fail to rebut [the probable cause presumption], essentially alleging only that the defendant officers *must* have fabricated evidence in light of [the plaintiff's] version of the

-13-

events and his ultimate acquittal.  Such conclusory allegations are insufficient to counter the presumption of probable cause, and to allow a court to draw the reasonable inference that the grand jury's indictment was a result of fraud or other misconduct" (citation omitted)).  However, "[w]here there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (quotation omitted).  Finally, where a plaintiff alleges that the arresting officers lied before a grand jury to help secure an indictment, he must "establish what occurred in the grand jury, and . . . establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'" *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (quoting *Colon*, 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248).

In this case, Plaintiff claims that, even if Defendants had probable cause to arrest him, issues of fact exist as to whether Defendants had probable cause to proceed with the criminal charges against him because the phone they seized from him was not associated with the drug buy and, in fact, had a number that began with a "434" area code. *See* Plaintiff's Statement of Facts at ¶¶ 22, 33 (citations omitted).  Therefore, Plaintiff asserts that Defendants "misrepresented and/or deliberately concealed" from the grand jury "that the cell phone [they] seized as evidence did not belong to [him] and was not seized from his person." *See* Complaint at ¶ 23; *see also id.* at ¶ 19 (stating that Defendants "falsely and maliciously asserted that the cell phone seized from [Mr. Kennedy] belonged to [Plaintiff]").

As noted, the Court cannot simply rely on Plaintiff's allegations in this complaint that Defendants lied about the cell phone they seized from him.[5] As the courts explained in *Savino* and *Lewis*, allegations in a plaintiff's complaint or memorandum of law that a defendant acted in bad faith, without more, are insufficient to overcome the probable cause presumption of a grand jury indictment. In addition, a plaintiff "cannot rely on the allegations in his . . . pleadings, conclusory statements, or on 'mere assertions that affidavits supporting the motion are not credible'" to defeat a motion for summary judgment. *Santana v. Rent a Throne, Inc.*, No. 2:15-cv-2563, 2018 WL 1027667, *2 (E.D.N.Y. Feb. 21, 2018) (quoting *Gottlieb. v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)). Rather, when the moving party has properly supported his motion with "affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried." *Id.* (citing *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). Finally, even if the Court were to assume that Defendants lied to the grand jury, the Court would still need to find that their false testimony was

---

[5] The Court notes that Plaintiff provided inconsistent testimony at several points in the record, which tends to undermine his claim that Defendants lied, misrepresented or concealed information. Specifically, Plaintiff's testimony before the grand jury on August 14, 2014, and his testimony at his deposition on August 25, 2015, which occurred as a result of his filing of a Notice of Claim with the City of Albany prior to commencing this lawsuit, are not always consistent. As noted, although Plaintiff admits that Defendants confiscated a cell phone from him during the arrest, *see* Plaintiff's Statement of Facts at ¶¶ 21-22, he claims that his phone had a number beginning with a Virginia area code of "434, *see id.* at ¶ 33. However, at his deposition, Plaintiff explained that the cell phone he had with him on the day of his arrest was his wife's cell phone, which had a "434" area code, and that the cell phone he had lost one or two weeks earlier had an Albany ("518") area code. *See* Plaintiff's Deposition Tr. at 34:17-35:11.

Regardless of whether the cell phone with the area code "434" belonged to Plaintiff or his wife, the evidence in the record indicates that Defendants seized two cell phones, one from Mr. Kennedy and one from Plaintiff, on the day of their arrests and that both of those cell phones had numbers that began with a "518" area code." *See* Defendants' Ex. 1: Photographs of Evidence Bags with Cell Phones.

"sufficient to erode the 'premise that the Grand Jury act[ed] judicially.'" *Rothstein*, 373 F.3d at 284 (quotation omitted).

In this case, an examination of the grand jury transcript unequivocally demonstrates that the grand jury acted judicially before handing down the indictment in Plaintiff's case. The grand jury questioned Defendants about the cell phones they had seized from Plaintiff and Mr. Kennedy based on information that Plaintiff had provided when he testified to his version of the events. *See* Grand Jury Tr. A at 36:11-39:13. The grand jurors asked Defendants how many phones they had retrieved from Plaintiff and Mr. Kennedy, whether any of the phones they had retrieved had a "434" or Virginia area code, as Plaintiff had testified, and asked detailed questions about the process whereby Defendants confirmed that the phone they had confiscated from Plaintiff was indeed the phone associated with the drug deal. *See id.* Furthermore, the grand jury heard both Plaintiff's and Defendants' versions of the events and took full advantage of the opportunity to question both Plaintiff and Defendants and to weigh the testimony of all the witnesses. Thus, despite Plaintiff's allegations that Defendants lied to or somehow misled the grand jury, the record does not support a finding that the grand jury did not act judicially or relied solely on Defendants' purported "false testimony" about the cell phone associated with the drug deal.

Furthermore, the grand jury had "independent, untainted information" upon which it could rely as a basis for the indictment against Plaintiff. Plaintiff does not claim that all of Defendants' testimony or that all of the evidence presented to the grand jury was false. In fact, he admits that the CS identified the car in which he was a passenger as the vehicle associated with the drug buy, that he was in the car with Ms. McKay, whom Defendants found carrying a significant quantity of heroin and cocaine, and that he was at the apartment building where the CS and his buyer had

agreed to execute the drug transaction. Based on this independent, untainted evidence alone, the grand jury could have found probable cause that Plaintiff intended to commit a crime.

Finally, even after viewing all the evidence in the record in the light most favorable to Plaintiff and drawing all reasonable inferences from that evidence in his favor, the Court concludes that Plaintiff has not raised an issue of material fact from which the Court could "draw the reasonable inference that the grand jury's indictment was the result of fraud or other misconduct," *Lewis*, 591 F. App'x at 22 (citation omitted), or that the criminal proceeding against Plaintiff lacked the requisite probable cause. To the contrary, the evidence in the record overwhelmingly supports the unrebutted conclusion that the criminal proceeding against Plaintiff was supported by probable cause. Therefore, for all of the above-stated reasons, the Court concludes that Plaintiff has not provided sufficient evidence to rebut the presumption of probable cause that the grand jury's indictment created.[6]

Accordingly, because Plaintiff has not come forward with sufficient evidence from which a jury could find that he had established all of the required elements of his malicious prosecution claim, the Court grants Defendants' motion for summary judgment with regard to that claim.

## IV. CONCLUSION

Having reviewed the entire record in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 36, is **GRANTED**

---

[6] The Court also notes that Plaintiff has not come forward with any evidence that would support a finding that Defendants instituted on continued the criminal proceedings against him with actual malice.

**in its entirety**; and the Court further

      **ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 30, 2018
       Syracuse, New York

                                    */s/ Frederick J. Scullin, Jr.*
                                    Frederick J. Scullin, Jr.
                                    Senior United States District Judge